## Case No. 4,144.

### In re DUNHAM.

[1 Hask. 495.][1]

District Court, D. Maine. Dec., 1873.

[1] [Reported by Thomas Hawes Haskell, Esq., and here reprinted by permission.]

## Case No. 4,145.

### In re DUNHAM et al.

[27 Leg. Int. 404;[1] 7 Phila. 611.]

District Court, D. New Jersey. 1870.

S. B. Ransom, for claimant.
Bird, Van Syckel & Voorhees, for assignee.

NIXON, District Judge. On the 28th of December last, L. D. Cook and Co. filed their petition in this court against William Dunham and Andrew J. Hawks, co-partners, alleging that the said firm had committed certain acts of bankruptcy. Upon the return of the rule to show cause, etc., the defendants made default, and were adjudged bankrupts on the 11th day of January following. The bankrupts had been engaged in manufacturing black walnut photograph frames, and had leased of the claimant real estate and buildings, in the township of Lebanon, county of Hunterdon, upon certain terms and conditions, not necessary for the decision of this case, to be more particularly stated. The firm of Dunham and Hawks was dissolved on the 1st of November, 1869, the former buying out the interest of the latter, and continuing the business in the name of Dunham and Brother, under the allegation that one of his brothers had

[1] [Reprinted from 27 Leg. Int. 404, by permission.]

,agreed to become a partner and put capital into the concern. The firm having become indebted to Dr. W. A. A. Hunt, the father of the claimant, for advances of money made by him for the purchase of pictures and machinery, to be used in carrying on their business, William Dunham, alone, on the 6th day of November, 1869, (shortly after Hawks had retired) executed to the said W. A. A. Hunt, a chattel mortgage upon the stock and machinery, to secure the payment of $6,600, which was filed in the clerk's office of the county of Hunterdon, on the 9th of November. There being a clause in this chattel mortgage, which authorized the mortgagee to take possession of and make sale of the mortgaged chattels, the said Hunt seized the property on the 23d of December following, and closed up the factory. On the next day, the landlord, who is the claimant in this case, issued his warrant, directed to a bailiff, commanding him to restrain for the sum of $862, claiming that to be the sum due to him for rent up to that date.

Upon filing the creditor's petition in bankruptcy, and upon making proof before the court, of the foregoing proceedings, on the part of the mortgagee and landlord, my predecessor here ordered an injunction to be issued, restraining the said parties from any farther prosecution of their claims, until the further order of the court. The property of the bankrupts was taken possession of by the marshal, and sold under order of the court, before the appointment of the assignee, and the proceeds of the sale were handed over to the assignee for the benefit of the creditors, subject to the decision of the court, as to the claims of the landlord and mortgagee, alleged to be liens thereon. The chattel mortgage was declared by my predecessor to be void; holding it to be a preference given by debtors to a creditor in fraud of the provisions of the bankrupt act. On the 25th of January, 1870, the landlord proved the demand for rent, claiming that there was due to him from the bankrupts' estate, to that date, $874.24, and that the same was a lien upon the goods and chattels in the leased premises, and which had been sold by the marshal discharged of all incumbrances. After proofs and able argument in that case, I held, that the landlord's lien for rent, created by the laws of New Jersey, had not been disturbed by the act of congress; that the fourth section of the "act concerning landlords and tenants" (Nixon's Dig. *418), forbidding the removal from any leased premises, of any goods and chattels, by virtue of an execution, attachment or other process, until payment is made to the landlord of all rent due, or which may have accrued at the time of the removal, provided that the arrears shall not exceed one year's rent, was the law of this court, in the administration of the bankrupt act; and that the landlord was entitled to receive out of the fund then in the hands of the assignee, the sum of $869,

the amount of rent due at the time of the seizure of the property by the marshal. On the 20th day of September last, upon application to the court, in behalf of the said landlord, a rule upon the assignee of said bankrupts was granted, requiring him to show cause on the 4th day of October following, why he should not pay to the landlord a reasonable compensation for the use and occupation of the leased premises, by the United States marshal, and that both parties have leave to take affidavits.

The proceedings in the case and the affidavits under the rule disclose the facts, that the marshal took possession of the personal property of the bankrupts, by virtue of the warrant issued upon the petition filed by creditors about the 1st day of January, 1870; that the property consisted of stock and machinery for carrying on their manufacturing business; that he made sale on the 24th day of January; and that the landlord again got possession of the premises on the first or second day of February, after the sale. It further appears that the Hunterdon Manufacturing Company had rented the property of the landlord for $1,700 per annum, the lease to commence as soon as the lessee could have possession; that the marshal used the real estate and buildings for the storage of the personal property of the bankrupts, and surrendered the possession thereof to the lessees about the second day of February aforesaid.

If the case rested here, I should have no difficulty in holding, that the landlord was entitled to receive from the assignee a fair compensation for his buildings, whilst they were held by the marshal for the storage of the bankrupt's effects; that they were thus held for the space of one month; and that the proofs in the case show, that the sum of $141.66 would be a reasonable recompense to be made for their use and occupation. For in such cases the assignee is the representative of the bankrupt's estate, and the theory of the law is, that he is in possession thereof, not from the date of the deed of assignment, but from the commencement of the proceedings in bankruptcy, to wit. from the filing of the petition. In re Faxon [Case No. 4,704]. And whilst he is not liable for the rent as such, after the date of the petition, unless. in behalf of the estate and for the benefit of creditors, he adopts a lease, that he may find upon the premises, yet he may not occupy the property of strangers for the custody of the bankrupt's goods and chattels, without making a just and proper compensation for the same. In re Walton [Id. 17,-131]; In re Appald [Id. 499]; In re Merrifield [Id. 9,465]. But the case does not stop here. It seems that the marshal held the premises, sold the chattels and machinery of the bankrupts, and handed over all the proceeds to the assignee, when notified of his appointment. No demand was made

by the landlord upon the marshal, and it does not appear that he was in any way apprised that the landlord had a claim or charge against him or the bankrupts' estate, for such occupation of his premises. The assignee received the proceeds of the sale from the marshal without notice that any such claim existed; and he testifies that the first knowledge he had of it, was on the 20th day of June last, after the dividend had been declared from the assets, and a payment made of such dividend to one of the creditors. The landlord then put in a written demand for the payment of $195.-79, as due to him for the use of the factory buildings by the marshal.

It is true, that there is a conflict in the testimony of the assignee and landlord, upon this subject. The landlord deposes that shortly after the appointment of the assignee he gave him notice of his claim for the occupation, and understood him to assent to the payment, of the same. But I think this conflict can be easily reconciled without the impeachment of the character or veracity of either the assignee or landlord. It must be remembered that the landlord's other claim for rent for the occupancy of the same premises by the bankrupts, was then unpaid, and it is quite probable, that whilst the landlord had one of these claims in his mind, the assignee presumed that his reference was to the other.

It was insisted upon the argument by the counsel for the assignee, and with much force, that the conduct of the landlord was a waiver of his demand; that he should not be permitted to stand by and see the assignee distribute to the creditors the assets of the estate, and then come in with his claim and virtually compel him to pay the debt out of his own pocket, and that all the court ought to be expected to do, would be to order the assignee to make a proper compensation to the landlord for his demand out of any assets that might hereafter come to his hands. I should be glad to be able to take this view of the matter, and if the proof had been, that the landlord did in fact remain silent on the subject of his claim, when he ought to have spoken, and by his reticence, had led the assignee into the error of distributing the assets without a knowledge of this unsettled demand, I should be inclined to hold, that he had waived his right to compensation. But it does not so appear. He was not diligent, it is true, in pressing his claim; but there is no evidence that he was aware that the dividend was about to be made, and that the assignee had not reserved funds for his payment.

Although it may seem a hardship in the case before us, I am constrained upon principle to order the assignee to pay this claim. Some rule must be adhered to; and it is a reasonable one, to hold the representatives of an estate liable for the expenses arising in administering it. It is well enough for assignees to understand that courts deal with them as the representatives of the bankrupts' estate from the commencement of proceedings in bankruptcy; that in the settlement it is their duty to look after the payment of all proper expenses incurred subsequent to that date; that before they consent to a dividend to the creditors, they should retain under their own control a sufficient sum of the assets to cover expenses and costs; and that their failure so to do—such failure being of their own wrong, or the result of their own neglect—can hardly be made the basis of an appeal to the court to relieve them from the consequences.

The order of the court is, that the claim of the landlord be allowed to the amount of $141.66, and that the assignee pay unto him this sum, as a reasonable compensation for the use of his premises by the marshal for the storage of the goods and chattels of the bankrupts, from the time that he took possession under his warrant until his surrender of the same to the lessee of the landlord.